United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 4, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-60070

_____

IN THE MATTER OF: REBECCA MITCHELL BARRON,

Debtor

CYNTHIA DANIELS,

Appellant,

versus

REBECCA MITCHELL BARRON; JOHN A. BARRON; CHARLES EASLEY,

Appellees.

_____

Appeal from the United States District Court
for the Northern District of Mississippi
_____

Before REAVLEY, JOLLY, and JONES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Cynthia Daniels appeals the award of attorneys' fees by the bankruptcy judge for her representation of a bankrupt's estate. Though we have previously addressed the issue in this case, it appears that, although the bankruptcy judge approved a one-third contingency fee for Daniels' agreeing to pursue a disputed claim for the bankrupt's estate, and she was 100% successful in obtaining and collecting the judgment, the bankruptcy judge reduced her fee. The bankruptcy court relied on an exception to Section 328, which permits a bankruptcy court to deviate from a previously-approved

compensation plan if the "terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. § 328(a).  The district court affirmed the bankruptcy court and Daniels appealed to this court.  We reversed and remanded, finding the bankruptcy court applied the wrong standard to determine whether circumstances satisfied the exception to Section 328.  See In re Barron, 225 F.3d 583 (5th Cir.  2000).  On remand, the bankruptcy court clarified its earlier opinion, indicated that it had originally applied the correct legal standard, and reaffirmed its previous award.  See In re Barron, No. 95-10538, slip op. at 3 (Bankr. N.D. Miss. May 22, 2001).  Daniels appealed to the district court, which affirmed.  See In re Barron, No. 1:99CV21-S (N.D. Miss., Jan. 2, 2002).  Daniels again appeals to this court and, because we find that the bankruptcy court has abused its discretion, we reverse and remand for entry of judgment.

I

The factual background of this case is stated succinctly in this Court's previous opinion in this case, In re Barron, 225 F.3d 583, 584-585 (5th Cir. 2000).  In pertinent part, Attorney Cynthia Daniels sought approval of a fee arrangement from the bankruptcy court to pursue an action on behalf of the bankruptcy estate, which arose from a divorce and remarriage of the debtor and her husband. Daniels' application stated she was willing to work on a one-third

2

(1/3) contingency basis of the amount recovered in the filing of any preferential and/or fraudulent complaints, if warranted. Various parties objected to her appointment, arguing that such representation and the fee arrangement were premature because of the potential ease of collection of the debt owed to Mrs. Barron's estate by Mr. Barron. The bankruptcy court found that there was a high likelihood of litigation in the matter and, over objections, approved of the arrangement with recovery of Daniels' contingency predicated on "an actual suit being filed against Mr. Barron following the filing of a demand letter." In re Barron, 225 F.3d at 584. Daniels agreed to take no fee if a demand letter proved effective in collecting the obligation.

After the arrangement was approved, Daniels sent the contemplated demand letter to Mr. Barron, and received no response. At this point, Daniels filed a complaint against Mr. Barron. After unsuccessful attempts by Mr. Barron to settle for less than the amount owed, Daniels moved for summary judgment after conducting three depositions. After a hearing, the court granted judgment against Mr. Barron for the full balance of $160,000 in August 1997. In re Barron, 225 F.3d at 584-85. Mr. Barron immediately tendered full payment to the court.

Daniels then filed an application seeking $53,333.33, one-third of the recovered judgment, in attorneys' fees. The Barrons objected to the application, as did a creditor who objected to her

payment in priority to his claim. After a hearing, the bankruptcy court acknowledged it had approved Daniels' employment and contingency arrangement, but then noted the sizeable loss to Mrs. Barron if Daniels was awarded her requested compensation. The court noted that the legal issue in the underlying dispute had been straightforward and thus resolution was "relatively" easy. Understandably, the court stated that it would try to do what was fair to all sides, and eventually awarded Daniels compensation of $24,341.25 with an additional expense allowance of $2,500.00. Daniels appealed to the district court which affirmed the award. On appeal, after careful consideration, this court reversed, finding that the bankruptcy court had abused its discretion, misinterpreting the applicable exception to 11 U.S.C. § 328 by failing to find that the circumstances relied on were incapable of being anticipated at the time the plan was approved.

On remand, the judge essentially reiterated his earlier holding, writing: "With all due respect, [the standard mandated by the Fifth Circuit] is the standard that was applied by this court when rendering its decision." In re Barron, No. 95-10538, slip op. at 3 (Bankr. N.D. Miss., May 22, 2001). The court added the additional observation that Daniels had had a relatively easy time *collecting* the judgment from Mr. Barron and thus the reduction in her fee award was reasonable. The district court affirmed the compensation award, and Daniels timely appeals to this court.

4

This court reviews a bankruptcy court's determination of attorneys' fees for abuse of discretion. In re Fender, 12 F.3d 480, 487 (5th Cir. 1994). This "abuse of discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." In re Coastal Plains, Inc., 179 F.3d 197, 205 (5th Cir. 1999) (quoting Koon v. United States, 518 U.S. 81, 100 (1996)). Consistent with this review, this court reviews a bankruptcy court's conclusions of law de novo. In re Texas Securities, Inc., 218 F.3d 443, 445 (5th Cir. 2000). Specific findings of fact are reviewed for clear error. Fender, 12 F.3d at 487.

Sections 328 and 330 of the Bankruptcy Code govern attorneys' fees in representing bankruptcy estates. Under 11 U.S.C. § 330, attorneys' fees are reviewed for their reasonableness after representation has concluded. In contrast, Section 328 of the Bankruptcy Code allows an attorney seeking to represent a bankruptcy estate to obtain prior court approval of her compensation plan. As this Court has noted, "able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 . . . ." In re National Gypsum Co., 123 F.3d 861, 862 (5th Cir. 1997). Under

Section 328, an attorney or other professional may avoid that uncertainty by obtaining court approval of her representation and fee arrangement prior to performing the contemplated services. Section 328 provides that once a compensation plan has been approved by the bankruptcy court, "the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. § 328(a).

The case law of this circuit, as reflected in <u>National Gypsum</u> and <u>In re Texas Securities</u>, 218 F.3d at 445-46, has not always clearly delineated Section 328(a)'s requirement that the intervening circumstances must have been <u>incapable</u> of anticipation, not merely unanticipated. This distinction is not insignificant. As the court in <u>Barron</u> noted, previous Fifth Circuit cases addressed the question whether Sections 330 or 328 applied; <u>Barron</u> was the first case in this circuit to specifically address Section 328(a) in relevant part. In that decision, this Court expressly noted the limitations on bankruptcy courts' ability to revise approved fee plans. We held that the bankruptcy court applied the incorrect legal standard by finding that the circumstances were merely unforeseen; instead, the bankruptcy court should have determined whether developments, which made the approved fee plan

6

improvident, had been incapable of anticipation at the time the award was approved.  In re Barron, 225 F.3d 586.

On remand, the bankruptcy court relied on three factors to find the previously approved compensation improvident. First, that it "did not anticipate the substantial amount of the subsequent recovery;" second, that the adversary proceedings became a "slam dunk;" and third, that the judgment was collected from Mr. Barron with "relative ease."  The bankruptcy court stated that it did not actually anticipate these developments at the time, but, apparently because of the lack of clarity in our previous opinion, it failed to explain why these developments were incapable of being anticipated at the time the award was approved.  We hold, as a matter of law, that none of these facts or developments was "not capable of being anticipated" within the meaning of Section 328(a).

As its first factor, the bankruptcy court candidly admits that it "did not anticipate the substantial amount of the subsequent recovery . . . ."  However, the bankruptcy court does not explain why this factor was incapable of being foreseen.  On remand, the bankruptcy judge addresses this 'development' by stating that "[t]his court could have and perhaps should have quoted the language of Section 328(a), adding after the word 'improvident' on page 9 of the initial opinion the following, 'in light of developments not capable of being anticipated at the time' . . ..  Unfortunately, it did not do so."  See In re Barron, No. 95-10538,

7

slip op. at 3 (Bankr. N.D. Miss. May 22, 2001).

Indeed, the amount of eventual recovery was reasonably foreseeable; the bankruptcy court had a copy of the disputed property settlement agreement, which clearly contemplated a bargained-for consideration of $210,000 for the parcels of real estate exchanged between the Barrons. Because $50,000 had been paid on that debt, the balance that remained was $160,000. Moreover, the Barrons never disputed the amount, only the validity of the obligation. Mr. Barron was not insolvent and it never appeared that he would not be able to pay the judgment. Consequently, this ground for departing from the approved fee arrangement is inadequate.

Second, the bankruptcy court stated that the adversary proceedings became a "slam dunk" to justify its conclusion that the fee arrangement was improvident. However, it has not been said how this development was incapable of being anticipated. In fact, the record indicates that this argument could have been anticipated. Creditors argued to the bankruptcy judge before the plan's adoption that Daniels' services were not needed, precisely because the proceedings would prove easy. One creditor even stated "all that is needed is a demand letter." Thus, the exchange demonstrates that not only was ease of litigation capable of being foreseen, there is evidence that it actually was foreseeable. Although the judge stated that "...[t]o me this was not a doubtful case. The

8

results were fairly well predictable that there was going to be recovery for this estate", the bankruptcy court has offered no reason why the alleged ease of enforcement was incapable of being anticipated at the time of the hearing <u>before</u> the contingency award was approved.

Finally, the bankruptcy judge added another ground to support his conclusion that the fees were improvidently awarded: the ease with which <u>collection</u> was effectuated by Daniels. "In many cases, obtaining a judgment is the easiest step. . . .  The attorney for the trustee was not required to issue garnishment, levy execution, or force the sale of the remaining parcels of property."  However, the bankruptcy judge does not articulate how this development was incapable of being anticipated; nor does it appear that it was in fact incapable of being anticipated.  There is no evidence that Mr. Barron did not have funds with which to pay an eventual judgment or that he would be inclined to avoid his obligation.  Although there was no certainty that Daniels would be able to collect the judgment, it seems to us one could equally reasonably anticipate that he might not unreasonably avoid payment, even if there was some possibility that collection would not be easy.  On the evidence before the bankruptcy court either scenario was capable of being anticipated, and neither was incapable of being anticipated. Thus, this ground is inadequate to demonstrate that a pre-approved fee arrangement was  "improvident."

9

III

In sum, we think that the bankruptcy court departed from the contingency fee arrangement approved under 11 U.S.C. § 328. There appear to be no intervening circumstances that were <u>incapable</u> of anticipation by the bankruptcy court <u>at the time it approved the award</u>. Although the court's reasoning has some force when viewed through today's lenses, the factors relied upon to find the award improvident were foreseeable. Because the bankruptcy court's application of Section 328(a) was legally incorrect, the court abused its discretion. On the facts of this case the bankruptcy court has not demonstrated circumstances that satisfy the exception provided in Section 328(a). Accordingly, Cynthia Daniels is entitled to the one-third contingency fee approved by the bankruptcy court. We therefore reverse and remand to the district court for entry of judgment in favor of Cynthia Daniels.

REVERSED and REMANDED for entry of judgment.

10

EDITH H. JONES, Circuit Judge, concurring:

A pox on all their houses! The panel's discussion euphemizes what was going on here -- a useless and blatant perversion of bankruptcy. Mrs. Barron filed this Chapter 7 bankruptcy case to avoid paying a judgment owed to her divorce lawyers after she remarried Mr. Barron. She then tried, unsuccessfully, to have the case dismissed, but the trustee pleaded on behalf of "the creditors' interest." Four of the six creditors are attorneys, one a private investigator, and they were altogether owed less than $50,000. Mrs. Barron was due to receive, either in real property or in unmatured installments, $160,000 from her then-and-again husband as part of their divorce settlement. For unknown reasons, Mr. Barron refused to pay off his wife's debts.

Understandably, there was confusion at the outset as to the enforceability of a divorce property settlement for a couple who have remarried. The inexorable bankruptcy-driven "logic" of this situation led to the appointment of Ms. Daniels as special counsel, on a contingency fee, with the mission of recovering value from Mr. Barron to pay off the attorney-creditors.

With the same sort of bankruptcy-driven logic, the panel concludes that the bankruptcy court should not have cut Ms. Daniels' fee, even after she recovered 'way more than was necessary to pay the creditors and the trustee, and herself became the

11

beneficiary of a sizeable windfall.  Were the events in the adversary proceeding "capable of being anticipated"?  Although I concur with the opinion, I think this is a close question.[*]

But what definitely should have been anticipated was the needless cost in time and administrative fees generated by Mrs. Barron's bad-faith resort to bankruptcy in the first place.  See 11 U.S.C. § 707(a) (court may dismiss a case "for cause").  She had assets.  He is wealthy.  She or her husband could pay the attorneys for their mutual misstep into divorce court.  This case is a prime example of how bankruptcy is misused.

---

[*]    A transcript from an early hearing in the case suggests considerable uncertainty surrounding the legal status of the divorce property settlement in this unusual situation.  Further, as the bankruptcy court pointed out in his opinion on remand, merely enforcing the property settlement would have required considerable additional work by Ms. Daniels, since she would have had to sell or file further proceedings to obtain the real property in question, or she would have had to await the payment of installments due under the agreement.  The bankruptcy court was legitimately surprised when Mr. Barron finally paid off the court's judgment against him with a check.